# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| LATUAN GAINEY,<br>　　　Plaintiff, | No. 3:21-cv-43 (SRU) |
| 　　　v. | |
| GARRET PAGEL, et al.,<br>　　　Defendant. | |

## <u>INITIAL REVIEW ORDER</u>

Latuan Gainey, currently confined at Garner Correctional Institution and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983 against the following defendants, all of whom are officers and detectives with the Waterbury Police Department:  Garret Pagel, J. Fusco, Fernando Lucas, L. Hofler, P. Charette, R. Davis, S. Lanese, and J. Desena.  Gainey principally contends that the defendants used excessive force against him in effecting his arrest on November 12, 2019.  He seeks damages in the defendants' individual and official capacities.

## I.    Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Conclusory allegations will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## II.    Allegations

On November 12, 2019, Gainey entered the basement of his girlfriend's home through the back door.  Compl., Doc. No. 1, at 8 ¶ 1.  Without announcing themselves, Detectives Pagel, Fusco, Lucas, Charette, and Hofler used a ram to forcibly enter the home through the front door. *Id.* at ¶ 2.  At the same time, Detectives Davis, Lanese, and Desena forced their way into the home through the rear of the residence.  *Id.*  The detectives did not have a search warrant to enter the home.  *Id.*, at 12 ¶ 7.

Gainey heard a crash and both his girlfriend and her mother scream.  *See id.*  He looked out the basement window and saw guns drawn.  *Id.* at ¶ 2.  With his hands raised, Gainey ran upstairs to surrender.  *See id.* at ¶¶ 2, 3.  No police officers were on the first floor, but he could hear them moving around on the second floor.  *Id.*  Gainey walked up the stairs to the landing, announcing that he was not resisting arrest and was turning himself in.  *See id.*  At no time did Gainey attempt to resist arrest.  *Id.* at ¶ 4.

Pagel thereafter came down the stairs with his gun drawn.  *Id.* at ¶ 5.  Using his gun, Pagel struck Gainey in the head with so much force that Gainey was rendered unconscious.  *See id.*  While Gainey lay unconscious, Pagel repeatedly punched Gainey with his gloved hand, elbowed him in the face, and kicked him in the head.  *See id.*  The other detectives followed suit, kicking Gainey in the head and body.  *Id.*

As a result of the assault, Gainey was treated for several injuries in the intensive care unit at St. Mary's Hospital. *Id.* at ¶¶ 5, 9. In particular, Gainey suffered a large laceration above his eye, lacerations to his eyelids and right ear, a right vertex subarachnoid intercranial hemorrhage, a left frontal subarachnoid hemorrhage, neck and back pain, cuts, abrasions, and permanent scarring. *See id.* at ¶ 8. Due to his injuries, he is unable to work, suffers from loss of vision in his right eye, and has neurological damage on the right side of his head. *Id.*

Upon his release from the hospital that day,[1] Gainey was taken to a bathroom at the Waterbury Police Department, where he was again kicked and punched by several detectives. *See id.* at ¶ 13. In an attempt to justify the injuries, Pagel swore out a complaint against Gainey for resisting arrest and attempting to escape; Pagel also falsified legal documents. *See id.* at 11 ¶ 10, 12 ¶ 7.

Gainey reported the incident to the Internal Affairs unit. *Id.* at 12 ¶ 9. An investigation was allegedly conducted with statements taken from witnesses, but no action was taken against the defendants. *Id.*

## III.   Discussion

Gainey asserts claims for excessive force, denial of equal protection, and denial of due process arising out of the defendants' forced entry and assault on November 12, 2019. *See* Compl., Doc. No. 1, at 11 ¶ 15 (Count One). Gainey additionally asserts unlawful arrest, deprivation of liberty without due process of law, and denial of equal protection arising out of the defendants' charges of resisting arrest and attempting escape. *See* Doc. No. 1, at 13 ¶ 11 (Count Two). Gainey further appears to raise a claim for supervisory liability against Davis and

---

[1] Gainey alleges that he was released from the hospital on August 13, 2019, three months before he was assaulted. Because the Connecticut Judicial Branch website confirms that Gainey was arrested on November 13, 2019, I assume that Gainey was released from the hospital on November 13, 2019.

for municipal liability against the City of Waterbury.[2]  *See* Compl., Doc. No. 1, at 13–14 ¶ 17

(Count Three).  Gainey premises each of the foregoing claims on the Fifth, Eighth, and

Fourteenth Amendment.  I address each claim in turn.

    A.  <u>Fifth and Eighth Amendment</u>

At the start, I note that the Due Process Clause of the Fifth Amendment applies to the

federal government, whereas the Due Process Clause of the Fourteenth Amendment applies to

the states.  *See Welch v. United States*, 136 S. Ct. 1257, 1261–62 (2016).  Because no defendant

named in the complaint is alleged to be a federal officer, there is no factual basis supporting a

Fifth Amendment claim here.

In addition, the Eighth Amendment applies to sentenced prisoners.  *See Whitley v. Albers*,

475 U.S. 312, 318 (1986) (explaining that the Eighth Amendment's protections apply only after

conviction).  Because the claims underlying this action occurred at the time of arrest, the Eighth

Amendment claim, too, is not colorable.  All Fifth and Eighth Amendment claims are therefore

**dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

    B.  <u>Fourteenth Amendment</u>

Gainey further asserts that he was deprived of equal protection under the law.  That claim

is insufficiently pled.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from

arbitrary or invidious discrimination.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473

U.S. 432, 446 (1985).  It does not mandate identical treatment for each individual or group of

---

[2] Although the City of Waterbury is not named as a defendant in the complaint's caption, I assume that
Gainey is advancing a claim against the municipality.

individuals; instead, it requires that "all persons similarly situated should be treated

alike." *See id*. at 439.

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege

that a government actor intentionally discriminated against him on the basis of his race." *Brown*

*v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000).  Such intentional, race-based

discrimination must "be alleged in a non-conclusory fashion."  *Clyburn v. Shields*, 33 F. App'x

552, 555 (2d Cir. 2002); *see also Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015)

(dismissing Equal Protection claim based only on allegations that the plaintiff was African-

American and that he was arrested because of his race).

In his complaint, Gainey does not plead any facts to support his equal protection claim.

Instead, Gainey raises one conclusory allegation that the use of excessive force was "racially

motivated by white officers that have a past history of racial discrimination," which is

insufficient to state a claim.  Doc. No. 1, at 9 ¶ 6.  He therefore fails to plead a plausible equal

protection claim, and the claim is **dismissed without prejudice** pursuant to 28 U.S.C. §

1915A(b)(1).  Gainey may file an amended complaint to reassert the claim if he can provide

sufficient factual support.

## C. Fourth Amendment

### 1. *Unlawful Search*

As noted, in Count One, Gainey claims the defendants deprived him of due process of

law.  Although Gainey does not include a reference to the Fourth Amendment in his complaint, I

assume that Gainey is in effect asserting a Fourth Amendment claim arising out of the

warrantless search of his girlfriend's home.

To state a Fourth Amendment claim for an unlawful search, "the person who claims the protection of the Amendment [must have] a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  The plaintiff bears the burden of proving that he or she had an legitimate expectation of privacy, which may be satisfied by showing that he or she owned the premises or that he or she occupied and exercised control over the premises with the permission of the owner.  *See United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005).

In his complaint, Gainey alleges that the home belonged to his girlfriend.  *See* Doc. No. 1, at 8 ¶ 1.  He pleads no facts suggesting that he owned the house, or that he lived there and exercised control over the house with the owner's permission.  Gainey, therefore, has not plausibly alleged that he enjoyed any expectation of privacy in his girlfriend's home as necessary to support a Fourth Amendment claim.

For those reasons, any Fourth Amendment claim arising out of the search of his girlfriend's home is **dismissed without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1).  Gainey may file an amended complaint to reassert the claim if he can provide factual support.

### 2.  *Excessive Force*

Gainey also propounds a claim for excessive force against the defendants.  That claim is cognizable and may proceed.

Claims for use of excessive force by police officers in the course of an arrest are evaluated under the reasonableness standard of the Fourth Amendment.  Specifically, to prevail on an excessive force claim, Gainey must show that the amount of force used was objectively unreasonable.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).  Whether a given quantum of force is excessive depends on the

facts and circumstances of the particular case, "including the severity of the crime at issue,

whether the suspect posed an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,"

and must allow "for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount

of force that is necessary in a particular situation." *Id.* at 396–97.

     In this case, Gainey alleges that, at the time of the arrest, he was not resisting arrest and

was unarmed.  He further alleges that, as he approached the defendants, he had his hands raised

and announced that he was turning himself in.  In response, Pagel struck Gainey in the head with

his gun, which rendered Gainey unconscious.  While Gainey was unconscious, Pagel repeatedly

punched him and, along with Fusco, Lucas, Hofler, Charette, Davis, Lanese, and Desena, kicked

Gainey in the head and body.  Gainey was thereafter treated in the intensive care unit at St.

Mary's Hospital and sustained serious injuries.

     The foregoing allegations are more than sufficient to suggest that the defendants' use of

force was unreasonable; Gainey has therefore stated a plausible claim for excessive force against

all individual defendants.

     I note further that, to the extent Gainey seeks to pursue a separate claim against Davis

based solely on the fact that Davis supervised the other defendants, the claim is not cognizable.

The Second Circuit recently announced that "there is no special rule for supervisory liability"

and that a plaintiff must instead establish "that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d

609, 618 (2d Cir. 2020).  Because Gainey has plausibly alleged that Davis himself used excessive force as discussed above, however, the Fourth Amendment claim against Davis may still proceed.

   D.  <u>False Arrest</u>

   Gainey additionally raises a claim for false arrest and deprivation of liberty without due process of law, which is premised on resisting arrest and attempting escape charges brought by the defendants.  Because Gainey does not distinguish the claims, I construe the claims as ones for false arrest and false imprisonment.  *See McCarthy v. Roosevelt Union Free Sch. Dist.,* 2017 WL 4155334, at *4 (E.D.N.Y. Sept. 19, 2017) (taking a similar approach and construing duplicative claims, including due process and false arrest claims, as one claim for false arrest); *Simon v. City of New York*, 2017 WL 57860, at *5 (S.D.N.Y. Jan. 5, 2017) (dismissing due process claim as duplicative of false arrest claim).

   "When evaluating section 1983 claims for false arrest and false imprisonment, the federal court looks to state law."  *Torres v. Town of Bristol*, 2015 WL 1442722, at *5 (D. Conn. Mar. 27, 2015).  Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Jordan v. Town of Windsor*, 2018 WL 1211202, at *6 (D. Conn. Mar. 8, 2018) (citation omitted).

   One element of a false imprisonment claim is favorable termination of the charges for which the plaintiff was arrested.  *See Torres v. Town of Bristol,* 2015 WL 1442722, at *5 (D. Conn. Mar. 27, 2015); *see also Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (under Connecticut law, "favorable termination is an element of 'a section 1983 claim sounding in false imprisonment or false arrest'") (cleaned up).

8

As alleged in his complaint, Gainey was arrested on November 13, 2019. Fatally, however, the complaint does not indicate whether the charges terminated in his favor. The Connecticut Judicial Branch website reveals five pending cases stemming from Gainey's arrest on that date: Case Nos. U04W-CR19-0487227-S, U04W-CR19-0487228-S, U04W-CR19-0487229-S, U04W-CR19-0487230-S, U04W-MV19-0477224-S. Each of those five cases is docketed as on the trial list. *See* STATE OF CONNECTICUT JUDICIAL BRANCH, *Criminal / Motor Vehicle Pending Cases Name Summary* (Gainey, Latuan) (last visited June 7, 2021). Because the charges have therefore not yet been terminated in Gainey's favor, any false arrest claims arising out of those arrests are not cognizable at this time. The false arrest claims are therefore stayed; Gainey may move to lift the stay if the charges are terminated in his favor.

## E. Official Capacity Claims

Gainey sues all defendants in their individual and official capacities. Claims against municipal officers in their official capacities are treated as though the claims are asserted against the municipality itself. *See Reynolds v. Guiliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the government entity itself."). A municipality cannot be held liable solely because it employs a tortfeasor—that is, a municipality cannot be held liable in a section 1983 action based on a *respondeat superior* theory. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Instead, to state a section 1983 claim against a municipality, the plaintiff must allege that he suffered a constitutional violation and that the violation resulted from a municipal policy or custom. *See Monell*, 436 U.S. at 690; *see also McCluskey v. Town of E. Hampton*, 2014 WL 3921363, at \*8 (E.D.N.Y. Aug. 7, 2014) ("section 1983 claims against police officers in their official capacities are barred unless a

plaintiff can show that the challenged conduct resulted from a municipal custom or policy")
(cleaned up).

There are four ways to establish a municipal policy or custom:  (1) a formal policy
officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) an action taken by a
government official responsible for establishing the policy that caused the particular deprivation
in question, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–84 (1986); (3) a practice so
permanent and widespread that, although not expressly authorized, practically has the force of
law, *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 403–04 (1997); and (4) a
failure to train or supervise that amounts to "deliberate indifference" to the rights of those with
whom the municipality's employees interact, *see City of Canton v. Harris*, 489 U.S. 378, 388
(1989); *Reynolds*, 506 F.3d at 192 ("Although *City of Canton* addressed a claim of a failure to
train, the stringent causation and culpability requirements set out in that case have been applied
to a broad range of supervisory liability claims.").

At the outset, I note that, although Gainey alleges that Davis supervised other defendants,
Gainey does not allege that Davis has policy-making authority.  Any decision by Davis is
therefore insufficient to support municipal liability.  *Pembaur*, 475 U.S. at 481–82 ("The fact
that a particular official—even a policymaking official—has discretion in the exercise of
particular functions does not, without more, give rise to municipal liability based on an exercise
of that discretion. The official must also be responsible for establishing final government policy
respecting such activity before the municipality can be held liable.") (citation omitted).

Gainey also seems to invoke the fourth theory of municipal liability in his complaint—
that is, the failure to train or supervise theory.  *See* Doc. No. 1, at 14 ¶ 17.  As the Second Circuit
elaborated, under *City of Canton*, "a city's failure to train its subordinates satisfies the policy or

custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *see also City of Canton*, 489 U.S. at 394–95 (O'Connor, J., concurring in part and dissenting in part) ("Where . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution.").

"An obvious need" may be established through "proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Deliberate indifference may further be illustrated "through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (cleaned up).

Critically, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Conclusory allegations will also not suffice. *See Simms v. City of New York*, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (collecting cases).

In his complaint, Gainey alleges facts relating only to the defendants' conduct on November 12, 2019. He does not set forth any facts that raise a plausible inference that the

police misconduct was the product of anything other than the individual actions of the officers at the scene. Gainey does not, for instance, point to other incidents of excessive force that were reported to policymaking officials, nor does he allege a failure to investigate any such incidents. The allegation that Davis and the City of Waterbury "failed to instruct, supervise, control and discipline" the other defendants in their duties to refrain from, *inter alia*, harassment, assault, and malicious arrest, is conclusory and thus cannot be credited. *See Iqbal*, 129 S. Ct. at 1949–50. Gainey has therefore failed to state a plausible claim for municipal liability based on the failure to supervise or discipline the defendants.

In sum, even when construing his allegations liberally, Gainey has failed to allege that the defendants' actions were the result of a municipal policy or custom. For the foregoing reasons, Gainey's claims against the individual defendants in their official capacities are **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1), as are any claims against the City of Waterbury.

CONCLUSION

All Fifth and Eighth Amendment claims, the equal protection claim, the Fourth Amendment unlawful search claim, the supervisory liability claim against Davis, the official capacity claims, and the claims against the City of Waterbury are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The false arrest or false imprisonment claims are stayed. Gainey may file an amended complaint to reassert the equal protection claim and the unlawful search claim if he can allege facts to correct the deficiencies identified in this order. Whether or not an amended complaint is filed, the case will proceed on the excessive force claims against Pagel, Fusco, Lucas, Hofler, Charette, Davis, Lanese, and Desena in their individual capacities.

Any amended complaint shall be filed within forty-five days from the date of this order. In his amended complaint, Gainey shall set forth all claims—including the claims that are proceeding—and all factual allegations underlying those claims.

The court enters the following additional orders.

(1)      The Clerk shall mail a waiver of service of process request packet containing the Complaint and this Order to Pagel, Fusco, Lucas, Hofler, Charette, Davis, Lanese, and Desena at the Waterbury Police Department, 255 East Main Street, Waterbury, CT 06402, within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)      The Clerk shall send the plaintiff a copy of this Order.

(3)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(4)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(5)      All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(8)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

     So ordered.

Dated at Bridgeport, Connecticut, this 11th day of June 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

14